976 A.2d 460 (2009)
409 N.J. Super. 246
STATE of New Jersey, Plaintiff,
v.
Ian FILSON, Defendant.
No. 18425, APPEAL NO. 37-2008
Superior Court of New Jersey, Law Division.
Decided February 17, 2009.
*462 Michael J. Mennuti, Assistant Prosecutor, for plaintiff (Joseph Bocchini, Mercer County Prosecutor, attorney).
Peter H. Lederman, Freehold, for defendant (Lomurro, Davison, Eastman & Munoz, P.A., attorneys).
OSTRER, J.S.C.

INTRODUCTION
In this municipal appeal from a driving-under-the-influence conviction, the court must construe the requirement that an Alcotest operator observe a defendant for twenty minutes before administering the test. See State v. Chun, 194 N.J. 54, 79, 943 A.2d 114 (2008) ("[T]he operator must observe the test subject for the required twenty-minute period ... to ensure that no alcohol has entered the person's mouth while ... awaiting the start of the testing sequence."), cert. denied, ___ U.S. ___, 129 S.Ct. 158, 172 L.Ed.2d 41 (2008).[1] One police officer was physically present with defendant during the traffic stop, the ride back to the station house, the booking process and the Alcotest administration. However, the officer left the room to stow defendant's cell phone. Because of discrepancies in the time-recording of various events, there was also insufficient evidence to establish clearly and convincingly that, even absent the departure to stow the cell phone, the officer observed defendant continuously for over twenty minutes before administering the Alcotest. Therefore, the State failed to satisfy a precondition to admitting the Alcotest results in evidence. In so concluding, this court relies on the Chun decision's plain language, the purpose of the twenty-minute observational requirement, and persuasive out-of-state authority construing comparable requirements.

*463 PROCEDURAL HISTORY

In the early morning hours of December 21, 2007, East Windsor Township police officer Ryan Ballard issued a complaint-summons charging defendant with driving while intoxicated. Based on an evidentiary hearing on March 11, 2008, the municipal court on August 11, 2008, denied a defense motion to suppress the fruits of the motor vehicle stop and the subsequent arrest. Defendant sought suppression on three grounds: (1) the police lacked reasonable and articulable suspicion of a violationfailure to maintain a lane under N.J.S.A. 39:4-88to justify the stop; (2) the police lacked a reasonable and articulable suspicion of driving under the influence of intoxicating liquors, sufficient to order him out of the car; and (3) after conducting roadside sobriety tests, the police lacked probable cause to arrest defendant and require him to submit to an Alcotest. The municipal court rejected each argument.
After a trial on August 11, 2008, the municipal court found that the State had not proved beyond a reasonable doubt a so-called observational case, but found, on the basis of the Alcotest results, that defendant committed a per se violation. The court rejected the defense argument that the Alcotest results should have been disregarded because the State had failed to prove that the officer had observed defendant continuously for twenty minutes before administering the Alcotest. Based on an Alcotest reading of .13 percent blood alcohol level, the municipal court ordered defendant's license suspended for seven months, and imposed other sanctions. The sentence was stayed pending appeal.
After argument February 17, 2009, on the municipal appeal, this court denied anew defendant's motion to suppress the fruits of the stop and arrest. However, the court agreed that the Alcotest results should be excluded because the State had failed to prove by clear and convincing evidence that it met foundational requirements for admitting the results in evidence.

FACTS
This court addressed in its oral opinion, and will not repeat here, the facts pertinent to its decision denying de novo defendant's motion to suppress the fruits of the stop, roadside investigation, and arrest. The court also addressed the facts relevant to its de novo finding that the State had failed to prove beyond a reasonable doubt that defendant committed an observational violation. (Although the State did not argue in support of an observational violation on appeal, the court was nonetheless free to convict on a different ground from that relied on by the municipal court. State v. Kashi, 180 N.J. 45, 48, 848 A.2d 744 (2004) (sustaining conviction on de novo review based on police observations although municipal court found the defendant not guilty on that basis)).
After a de novo review of the record, the court finds the following facts relevant to the twenty-minute-observation issue:
According to the complaint summons, Ballard certified that the offense occurred at 1:45 a.m. He so testified that he first observed defendant around that time. He then followed defendant for a mile and then conducted a motor vehicle stop. Ballard estimated that he followed defendant for one to two minutes. His report of the incident also asserted that the stop took place at 1:45 a.m., give or take less than a minute.
However, he conceded that his report's statement that the stop took place at 1:45 a.m. was based on an extrapolation backward from 1:57 a.m., when he reported to dispatch that he was arresting defendant. He stated that the "card was punched" at *464 1:57 a.m. That was when dispatch reported the arrest. However, Ballard admitted that the punched time might not be exact. He simply approximated how long the field sobriety tests had taken before the arrest, and came up with a "rough guess" of when the stop occurred. He actually wrote the complaint summons, which reported the stop at 1:45 a.m., when he was back at the police station. Although Ballard had advised the dispatcher of the stop when it started, he did not refer to the dispatcher's radio log in determining the time of the stop on the complaint summons. He did not claim to have referred to a reliable clock contemporaneous with the stop. Ballard admitted that his recorded time of the stop of 1:45 a.m. could have been five to ten minutes later or earlier than he reported it. Thus, Ballard testified that the stop could have occurred as early as 1:35 a.m., and as late as 1:55 a.m.
According to the video recorder's clock, which is visible on the videotape of the stop, the motor vehicle stop began at 1:40 a.m.not 1:45 a.m. as Ballard roughly guessed. According to the tape, defendant and Ballard arrived at the East Windsor Police Department at 2:07 a.m. Ballard admitted that the total elapsed time on the videotape of twenty-seven minutesfrom the stop to the arrival at the station housewas accurate. Moreover, importantly, as will be discussed below, according to the video recorder's clock, Ballard placed defendant under arrest at 1:55 a.m., not 1:57 a.m. according to when "the card was punched." Defendant arrived at the station house twelve minutes after the arrest, at 2:07 a.m.
Ballard testified that after processing defendant, he read the uniform rights form at 2:18 a.m. This is reflected on the form, itself. Ballard also read a standard statement prescribed by the New Jersey Motor Vehicle Commission before administering the Alcotest. Ballard testified that he observed the defendant for an uninterrupted period of twenty minutes in the booking area before reading the New Jersey Motor Vehicle Commission's standard statement.
He also testified that he observed him for twenty minutes before administering the Alcotest. He testified that the defendant did not drink, burp or vomit during that time. However, when asked, "How was it that you made this observation for a period of twenty minutes," Ballard answered, "I was with him in the booking area for that time." Ballard did not claim that he referred to a particular clock.
Ballard admitted that he discovered that defendant possessed a cell phone. He also admitted that he took the cell phone and put it in a separate room. Consequently, he left defendant unattended for as long as it took him to accomplish that task.
According to the printout from the Alcotest device, the arrest occurred at 2:00 a.m. (The record does not indicate when or how this time was entered into the device.) Thus, the clock on the Alcotest device apparently was five minutes faster than the clock on the video recorder, which recorded the arrest at 1:55 a.m. Consequently, the Alcotest device's clock would have indicated that defendant arrived at the station house at 2:12 a.m. (whereas, as noted above, the video recorder's clock indicated a 2:07 a.m. arrival). Defendant gave his first breath sample at 2:28 a.m., according to the Alcotest device. Therefore, that was apparently only sixteen minutes after he arrived at the station house. The second sample was taken at 2:32 a.m. A control test was performed at 2:33 a.m., and the last ambient air blank was taken at 2:34 a.m.
After the Alcotest was completed, the uniform rights form indicated that defendant agreed to talk to the officer at 2:54 a.m. On the other hand, his responses to *465 the drunk driver questionnaire indicate that he was questioned regarding his occupation and medical status "prior to Miranda"[2] at 2:45 a.m. However, Ballard testified that he gave the Miranda warning before asking those occupational and medical questions. According to the questionnaire, defendant claimed that his last drink was at 1:43 a.m.just two minutes before Ballard claimed he saw defendant on the road.

DISCUSSION
As a threshold matter, this court concludes that the State must satisfy the twenty-minute observational requirement as a precondition to admitting Alcotest results into evidence. The court will then construe the twenty-minute observational requirement, based on the Chun Court's plain language, as well as persuasive authority from other jurisdictions. The court will then apply that requirement to the facts of this case.

1. Twenty-Minute Observation is Required

The Supreme Court found that, subject to certain modifications, the Alcotest device "is generally sufficiently reliable ... to permit its results to be admissible or to allow it to be utilized to prove a per se violation of the [driving-under-the-influence] statute." State v. Chun, supra, 194 N.J. at 65, 943 A.2d 114. The Court dictated some modifications to address technical shortcomings of the device. The Court imposed other pre-conditions to admissibility to preserve defendants' confrontational rights. Other requirements, such as periodic testing of the machines, were designed to assure that the machine used in a case was in working order. The Court's order detailed these requirements. Id. at 150-54, 943 A.2d 114.
The twenty-minute observational requirement is not embodied in the Court's implementing order as a condition of admissibility. However, the order declares that the Alcotest itself, specifically, the Alcotest 7110 MKIII-C with New Jersey Firmware version 3.11, is sufficiently reliable scientifically. In other words, it is capable of measuring, with sufficient accuracy, a subject's blood alcohol level based on its analysis not of blood, but of the subject's breath. However, the Court elsewhere identified, and adopted, protocols designed to assure that the subject's breath sample is untainted.
In addition to dictating various technical modifications to all Alcotest devices used in New Jersey, the Chun Court also conditioned admissibility on the State's proof that (1) the specific device used was in working order, and had been inspected according to procedure; (2) the operator was certified; and (3) "the test was administered according to official procedure." Id. at 134, 943 A.2d 114. The Court did so by reaffirming the conditions that it had previously applied to admissibility of Breathalyzer® results in Romano v. Kimmelman, 96 N.J. 66, 81, 474 A.2d 1 (1984). "In matters relating to the Alcotest, the same general consideration that gave rise to these requirements must, of course apply." State v. Chun, supra, 194 N.J. at 134, 943 A.2d 114.
The Supreme Court thus adopted the protocol that an operator or other person associated with the operator must observe the testing subject for twenty minutes before starting the test, and then during the testing, must assure that the subject does not burp or regurgitate or otherwise contaminate the breath sample.
Operators must wait twenty minutes before collecting a sample to avoid over-estimated *466 readings due to residual effects of mouth alcohol. The software is programmed to prohibit operation of the device before the passage of twenty minutes from the time entered as the time of the arrest. Moreover, the operator must observe the test subject for the required twenty-minute period of time to ensure that no alcohol has entered the person's mouth while he or she is awaiting the start of the testing sequence. In addition, if the arrestee swallows anything or regurgitates, or if the operator notices chewing gum or tobacco in the person's mouth, the operator is required to begin counting the twenty-minute period anew.
[Id. at 79, 943 A.2d 114].
See also id. at 140, 943 A.2d 114 (noting that the operator's responsibilities include "observing the subject to ensure that twenty minutes have passed and to be certain that the subject has neither swallowed nor regurgitated any substances during that time that would influence the tests results....").
The State bears the burden of persuasion, as the State seeks the admission of the Alcotest results. See Romano v. Kimmelman, supra, 96 N.J. at 91, 474 A.2d 1 (addressing the Breathalyzer®, "the responsibility for establishing all conditions as to the admissibility ... is properly allocated to the State"). Thus, defendant is not obliged to present proof that he did vomit or regurgitate in order to suppress the Alcotest results, in the absence of affirmative proof from the State that defendant was continuously observed. Rather, the State must present affirmative proof that an operator actually observed the defendant.
Under State v. Downie, 117 N.J. 450, 455-56, 569 A.2d 242, cert. denied, 498 U.S. 819, 111 S.Ct. 63, 112 L.Ed.2d 38 (1990), governing admissibility of Breathalyzer® results, "the operator must be sure that at least twenty minutes have expired since the last ingestion of alcohol to avoid the presence of `mouth' alcohol, which can give a falsely high reading." In State v. Dorman, 393 N.J.Super. 28, 31-32, 922 A.2d 766 (App.Div.2007), affirmed on other grounds, 195 N.J. 357, 949 A.2d 809 (2008), cert. denied, ___ U.S. ___, 129 S.Ct. 2858, ___ L.Ed.2d ___ (2009), the court apparently inferred that the State satisfied the requirement, simply because the defendant was in the presence of the officer for twenty-six minutesbetween a roadside stop at 11:54 p.m. until the first Breathalyzer® test at 12:22 back at the police station. The decision does not reflect that there was affirmative testimony that the officer had actually observed the suspect, as opposed to simply being present with him.
However, the case is distinguishable first, because the court was apparently concerned only with the potential of ingestion of alcohol, which is by its nature likely to be detected simply by being present with someone. By contrast, under Chun, a court must exclude the possibility of ingestion of any foreign item, such as chewing gum or tobacco, as well as the potential of regurgitation, including regurgitation into a closed mouth. Those are more likely to be overlooked unless close observation is maintained. Second, the Chun Court expressly stated "the operator must observe the test subject for the required twenty-minute period of time." 194 N.J. at 79, 943 A.2d 114.
Of course, once the State has met the initial burden of persuasion by presenting an operator's testimony that he or she observed no regurgitation or ingestion for twenty minutes, a defendant is free to testify that he did regurgitate. Doing so would not apparently waive his right to remain silent on the merits of the State's case. See N.J.R.E. 104(d) ("By testifying *467 upon a preliminary matter, the accused does not become subject to cross-examination as to other issues in the case.").
As for the standard of proof, the State must also satisfy its burden of persuasion regarding admissibility of Alcotest results by clear and convincing evidence. See Romano v. Kimmelman, supra, 96 N.J. at 90-91, 474 A.2d 1 (applying clear-and-convincing standard to admissibility of Breathalyzer®, construing the words "clearly establish"). See also State v. Chun, supra, 194 N.J. at 92, 943 A.2d 114 (stating that proponent of scientific evidence must "clearly establish" reliability). Thus, the State must prove compliance with the twenty-minute observational requirement by clear and convincing evidence.
Moreover, there is no basis to conclude that the Court would accept "substantial compliance" with the preconditions of admissibility that it set forth. The Court drew bright lines, indicating what must be done to assure the scientific reliability of the Alcotest. Indeed, the Special Master, whom the Supreme Court appointed to review the Alcotest's reliability, found that meticulous adherence to the testing protocol, which includes the twenty-minute observation requirement, should be a prerequisite to admissibility of Alcotest results. Report and Recommendation of the Special Master, Feb. 13, 2007, at 230, reprinted at 2007 N.J. Lexis 39, *267 ("Special Master's Initial Report") ("Of course, the multiple-step testing protocol must be meticulously followed before the test result is admitted in evidence."). The Supreme Court adopted, as modified, the Special Master's findings. State v. Chun, supra, 194 N.J. at 149, 943 A.2d 114.

2. The Observation Requirement Construed

While Chun requires a twenty-minute observation, the observation need not consist only of eye-to-eye contact. This conclusion finds support in the Chun decision's plain language, and the Court's apparent intent. On the other hand, the observer must be attentive, trained, and close enough to the subject to perceive through other senses a tainting event if one occurs.
First, the Chun Court uses the terms "observe" and "observing" when referring to the operator's duties to assure an untainted breath sample. The common meaning of the term is not restricted to maintaining eye contact. One dictionary defines "observe" to mean "[t]o perceive; notice; see." The American Heritage Dictionary of the English Language (1971). A usage manual defines "observation" to mean "scrutiny or study." B. Garner, A Dictionary of Modern Legal Usage (1995) at 611. See also Manriquez v. Gourley, 105 Cal.App.4th 1227, 130 Cal. Rptr.2d 209, 215-16 (2003) (relying on the Oxford English Dictionary, court holds that "observation" in context of breath test requirement means the act of paying attention, marking, or noticing; and does not necessarily require uninterrupted eye contact.).
Thus, a person may observe a subject by listening, smelling, or feeling, instead of seeing. Yet, one cannot observe a subject who is physically so far from the observer that the observational senses cannot detect something significant when it occurs. For example, it would certainly stretch the term beyond its plain meaning to hold that an officer can observe a subject while in another room. After such an interruption, the operator would need to start a twenty-minute observation anew. That is consistent with the Special Master's review of the testing protocol. "The twenty-minute period must also restart if there were any interruptions in the officer's *468 observation of the subject. (60T10)." Special Master's Initial Report at 133-34, 2007 N.J. Lexis at *132 (discussing New Jersey State Police testing protocol, described by State Police Sergeant Kevin Flanagan).
It is unclear whether an unaccompanied officer can "observe" a defendant while the officer is driving, especially if the defendant is seated behind an interior patrol-carbarrier, and the officer is distracted by traffic, the radio, and road noise. Testimony before the Special Master recognized the difficulty in observing a defendant while transporting him or her to the station, unless a second officer assisted.
An operator may not begin the test on a subject prior to a twenty-minute observation period to ensure that there is no alcohol in the mouth cavity. (52T70). In New Jersey, the twenty minutes may begin at the station or immediately after the arrest provided that an officer can testify that the observation was continuous and uninterrupted. For example, Flanagan said that State Police ride double and a trooper could sit in the back and properly observe the subject. (52T71).
[Special Master's Initial Report, at 133, 2007 N.J. Lexis at *132 (emphasis added)].[3]
A definition of "observe" that encompasses visual and non-visual senses is implicit in our Supreme Court's description of the operator's duties. The Court noted that at the same time that the operator must "observe" the test-subject, while engaging in a variety of activities that would unavoidably require the operator to avert his or her eyes, at least momentarily, from the subject.
His role now consists of observing the subject to ensure that twenty minutes has passed and to be certain that the subject has neither swallowed nor regurgitated any substances during that time that would influence the test results; inputting and verifying the accuracy of the identifying information needed to start the sequence; changing the control solution if the machine alerts him to do so; attaching a new mouthpiece; reading the instructions about how to blow into the machine; observing the LED screen and following its prompts; and observing the subject to ensure that he or she actually provides a sample.
[State v. Chun, supra, 194 N.J. at 140, 943 A.2d 114].
The Court apparently did not contemplate that the operator would have to restart the twenty-minute period if he had to turn away to attach a new mouthpiece, change the solution, or read instructions to the subject.[4]
*469 In sum, what constitutes observation must be determined in view of the purpose of the observation requirement: to assure that the suspect has not ingested or regurgitated substances that would confound the results. An officer's observation should be of the sort capable of detecting contamination if it actually occurred. Thus, an officer who looks away must be close enough to detect contamination through aural or olfactory senses. An officer who rides alone in the patrol car with the suspect must be especially attentive to the suspect, free from road-related distractions, to spot regurgitation or ingestion if it occurs.

3. Out-of-State Authority

This court's interpretation of the twenty-minute observation is consistent with the well-reasoned views of other states' courts.
[W]e hold that continuous observation... does not mean an officer must keep his or her eyes focused on the subject for an uninterrupted 15-minute period. Observation is not limited to perception by sight; an officer may perceive a subject has eaten, drank, smoked, vomited or regurgitated by sound or smell and the perception by senses other than sight can be sufficient to comply with the regulation In our view, uninterrupted eye contact is not necessary (and may not always be sufficient by itself) to determine whether the proscribed events have occurred, so long as the officer remains present with the subject and able by the use of all his or her senses to make that determination.
[Manriquez v. Gourley, supra, 130 Cal. Rptr.2d at 216].
In Glasmann v. State, 719 P.2d 1096 (Colo.Ct.App.1986), the officer closely and continuously observed a breath-test subject for twenty minutes, although he occasionally averted his eyes from the defendant to prepare forms. The officer remained in the defendant's presence. "We do not read the regulation as requiring in all cases that the officer stare fixedly at a test subject for twenty minutes; rather, compliance with the regulation is a question of fact to be decided under the circumstances of each cases...." Id. at 1097. See also State v. Remsburg, 126 Idaho 338, 882 P.2d 993, 996 (1994) (fixed eye contact not required if the officer remains with defendant, despite occasionally averting his eyes while he read the advisory form to defendant and programmed device); People v. McDonough, 132 A.D.2d 997, 518 N.Y.S.2d 524, 526 (paperwork preparation did not prevent observation), appeal denied, 70 N.Y.2d 801, 522 N.Y.S.2d 119, 516 N.E.2d 1232 (1987); Peterson v. Wyoming *470 Dep't of Transp., 158 P.3d 706, 710 (Wyo.2007) (fixed staring of subject not required). See generally D. Landis, Necessity and Sufficiency of Proof that Tests of Blood Alcohol Concentration Were Conducted in Conformance With Prescribed Methods, 96 A.L.R.3d 745, § 9 (2008) (collecting other cases).
Some courts have included drive time with a single police officer, if the officer establishes that he or she was attentive to what the suspect was doing in the back seat. See, e.g., Williford v. State, 284 Ark. 449, 683 S.W.2d 228, 229 (1985) (including time that the officer observed the suspect "in the patrol car's rear view mirror" where suspect sat on the passenger side of the back seat); Manriquez v. Gourley, supra, 130 Cal.Rptr.2d at 217-18, (the arresting officer talked to the defendant while in the car, and looked at him in his rearview mirror during the drive to the jail); Barone v. State, 736 P.2d 432, 434 (Colo.Ct.App.1987) (including drive time where "officer said he watched [suspect]... in the rear-view mirror and that he was not distracted by any radio calls or traffic noise"); State v. Smith, 16 Conn. App. 156, 547 A.2d 69, 73 (including observation time while officer operated the police cruiser), appeal denied, 209 Conn. 820, 551 A.2d 758 (1988); State v. Vialpando, 89 P.3d 209, 214 (Utah Ct.App.2004) (in-car observation accepted where suspect sat handcuffed next to trooper in front seat, trooper monitored the suspect "visually and aurally," and there was minimal traffic and road-related distractions). But see State v. Carson, 133 Idaho 451, 988 P.2d 225, 227 (1999) (in-car observation rejected because of foul weather noise interference and officer's hearing impairment).
The Connecticut court in State v. Smith, supra, 547 A.2d at 73, noted that a different interpretation would open the door to mischief by the defendant who could "thwart compliance with the regulation simply by turning his head away from the observing officer." But see State v. Arnold, 80 S.W.3d 27, 30 (Tenn.Crim.App. 2002) (finding the officer did not observe suspect in vehicle, or when he exited the car). However, the Tennessee courts have adopted a narrower definition of observation than this court finds consistent with Chun. See State v. McCaslin, 894 S.W.2d 310, 311 (Tenn.Crim.App.1994) (court disregards six minutes of drive time, rejecting State argument that "`eyeball to eye-ball' observation" not required).
Out-of-state authority supports this court's view, stated above, that if an officer leaves the area where the subject is being detained, then observation ceases. State v. Utz, 125 Idaho 127, 867 P.2d 1001 (1993). See also State v. DeFranco, 143 Idaho 335, 144 P.3d 40, 43 (2006) (officer did not observe defendant where he rummaged in the car's trunk, the defendant was seated in the vehicle, and the officer "could not have heard or smelled a belch or regurgitation because of the trunk lid and the rear window separating the men and the sound of the cruiser's running engine"). Likewise, if the suspect leaves the area briefly, observation ceases. Mitchell v. Kansas Dep't of Rev., supra, 200 P.3d at 502 (even applying substantial compliance standard, State failed to satisfy observation requirement when suspect left room to use restroom for a couple of minutes); State v. Gardner, 126 N.M. 125, 967 P.2d 465, 469 (observation requirement not satisfied when suspect left the room briefly to use bathroom during the twenty-minute period), cert. denied, 126 N.M. 107, 967 P.2d 447 (1998).
Other courts agree that the observation time-period is not relaxable based on a principal of substantial compliance, as the observation period relates to admissibility of evidence. See, e.g., Clawson v. State, *471 867 A.2d 187, 191-93 (Del.2005) (test results excluded because nineteen-minute observation inadequate to satisfy twenty-minute requirement); Dep't of Highway Safety and Motor Vehicles v. Farley, 633 So.2d 69, 71 (Fla.Dist.Ct.App.1994) (where twenty-minute observation required, seventeen-minute observation inadequate to sustain test); State v. Gardner, supra, 967 P.2d at 470-71 (court rejects substantial compliance argument that would relax the twenty-minute time period). But see, e.g., Wester v. State, 528 P.2d 1179, 1183-85 (Alaska 1974), cert, denied, 423 U.S. 836, 96 S.Ct. 60, 46 L.Ed.2d 54 (1975) (holding that substantial compliance with fifteen-minute observation period was sufficient).
Moreover, a court may find that the observation requirement is unmet where there is conflicting evidence of when the observation period started. See Commonwealth v. Pierre, 72 Mass.App.Ct. 230, 890 N.E.2d 152 (2008) (in view of conflicting and confusing evidence of when arrest, transport, and testing occurred, Commonwealth failed to prove compliance with observation requirement); DeBoer v. Nebraska Dep't of Motor Vehicles, 16 Neb. App. 760, 751 N.W.2d 651, 656 (2008) (court finds observation of only thirteen minutes, based on testing records, notwithstanding operator's testimony that he observed for the required fifteen minutes according to his wristwatch).
In sum, this court's interpretation of the Chun Court's twenty-minute observation requirement finds support in other state court decisions.

4. Principles Applied

Applying the above principles, this court need not reach the issue of whether an officer driving a police cruiser can sufficiently observe a suspect to satisfy Chun. It may depend on the attentiveness of the officer, the placement of the defendant in the rear seat, and the configuration of the vehicle. It may also depend on the presence of other road noise and distractions that might prevent the officer from seeing, hearing, or smelling the defendant. However, Ballard did not specifically testify that he observed defendant during the ride back to the station house. Nor did Ballard provide details about his own attentiveness, defendant's placement in the vehicle, and the absence of road-related distractions. Therefore, the court cannot find that Ballard observed defendant while in the patrol car.
Consequently, the State must satisfy the twenty-minute observation requirement by proving that Ballard observed defendant for twenty minutes in the station house. However, the evidence does not clearly and convincingly persuade this fact-finder that Ballard did that. Although this court gives due deference to the municipal court judge's finding that Ballard did not intend to deceive, the issue is not his honesty, but his accuracy. The court reaches this conclusion for three reasons.
First, the observation period was interrupted when Ballard left defendant unattended, so Ballard could remove defendant's cell phone from the room. While it was likely for a short period of time, it was nonetheless a significant interruption in the observation. As discussed above, consistent with meticulous enforcement of testing protocols, the State has failed to prove continuous observation for twenty minutes.
Secondly, Ballard's lack of confidence regarding his own time estimates undermines his assertion that he observed defendant for twenty minutes. Ballard is unsure when the stop actually occurred; it could have been as early as 1:35 a.m. or as late as 1:55 a.m. He gave a "rough guess" *472 that the stop occurred at 1:45 a.m. by approximating how long it took him to administer field sobriety tests before he placed the defendant under arrest, allegedly at 1:57 a.m. He did not claim that he referred to a clock when he conducted the stop. Likewise, although he asserted that he observed defendant for twenty consecutive minutes, Ballard did not claim he looked at a particular clock to mark the time.
Ballard's timekeeping on the drunk driver questionnaire and uniform rights form also raises doubts about his accuracy. According to Ballard, defendant agreed to talk to Ballard at 2:54 a.m., but provided information about his employment and medical status nine minutes earlier, at 2:45 a.m. That would make sense if the officer, consistent with the apparent intent of the forms, interviewed defendant about his employment and medical status, then reiterated the Miranda warning, then sought information about the substantive offense. However, Ballard testified that he gave the Miranda warning at 2:18 a.m. and did not repeat it.
Third, extrapolating time from the video recorder's clock and the Alcotest device, it appears that the first breath sample was taken only sixteen minutes after defendant arrived at the station house. Moreover, the observation likely did not begin immediately upon arrival in the sally port, because the officer first had to exit his vehicle, likely step away to secure his weapon, and then remove the handcuffed defendant from the vehicle and escort him to the booking room. As discussed above, according to the video recorder's clock, defendant was arrested at 1:55 a.m. According to the Alcotest device, the arrest occurred at 2:00 a.m. Therefore, when the video recorder's clock indicated that defendant arrived at the stationhouse at 2:07 a.m., the Alcotest device's clock would have indicated a 2:12 a.m. arrival. The first breath sample was taken at 2:28 a.m. according to the Alcotest device, before twenty minutes of observation could be completed.
Alternatively, if the stop did indeed occur at 1:45 a.m., as Ballard guessed, and not at 1:40 a.m. as the video recorder indicated, then defendant still would have arrived at the station house at 2:12 a.m. That is because the undisputed elapsed time between the stop and the arrival was twenty-seven minutes, according to the video recorder's timer. Twenty-seven minutes after 1:45 a.m. would have been 2:12 a.m.
The State argued that the clock by which Ballard estimated the time of the stop was not necessarily synchronized with the clock on the Alcotest device. However, this misses the point that the State bears the burden of persuasion. The State must prove, clearly and convincingly, that the officer observed defendant for twenty minutes. As noted above, Ballard's conclusory assertion that he observed defendant for twenty minutes simply is unpersuasive, given the discrepancies in the various recorded times, Ballard's own lack of precision about when other events occurred, and the extrapolation between the video recorder's time-of-arrest and the Alcotest device's time-of-arrest, which indicates that defendant was in the station house for only sixteen minutes before supplying his first breath sample.
The State therefore has not met its burden to prove, clearly and convincingly, that the operator continuously observed defendant for twenty minutes before administering the Alcotest. Therefore, the court excludes the results from evidence.

CONCLUSION
Since the Alcotest results are excluded, a judgment of not guilty shall be entered *473 on the charge of a per se violation of N.J.S.A. 39:4-50.
NOTES
[1] This opinion, issued under Rule 2:5-1(b), supplements and supersedes the court's oral opinion issued February 17, 2009 and its summary/rationale issued February 19, 2009. The court writes here solely to address the issue of the twenty-minute observation requirement.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] In State v. Dorman, supra, 393 N.J.Super. at 31, 922 A.2d 766, it is unclear whether travel time to the police station was included in the twenty-minute period during which defendant was found not to have ingested alcohol. The stop occurred at 11:54 p.m. and the test was performed at 12:22 a.m. But, the decision does not address when the officer and defendant arrived at the station. The station was "minutes away." Ibid. Therefore, they may have arrived before 12:02 a.m. Moreover, as discussed above, Chun apparently requires a closer observation than Downie.
[4] Although not an issue in this case, this court has concluded in the context of another municipal appeal that someone other than a certified Alcotest operator may conduct the twenty-minute observation, notwithstanding that the Chun Court refers consistently to the obligation of the "operator" to conduct the observation. If a police department assigned an officer not certified to operate the Alcotest to observe a defendant while the certified operator read instructions, prepared the machine, changed test solutions and attached new mouthpieces, the observation would be more thorough than if only the operator observed the subject. Therefore, it would run afoul of the express purpose of the observationto ensure an untainted breath sampleto accept observations only by operators. On the other hand, whoever observes the subject must know why he or she is observing. If uninformed in advance about what to look for, the observer will not necessarily notice it. Out-of-state authority supports the principle that a certified operator may delegate observation duties to a non-certified person. See, e.g., State v. McVay, 83 Or.App. 312, 731 P.2d 466, 467 (1987) (noting that operators are certified to ensure proper operating of the equipment, but "nothing in the regulations... supports the position, that there is any special skill required to observe a person to ensure that he did not take anything by mouth, vomit or regurgitate."). See also Sparrow v. State, 284 Ark. 396, 683 S.W.2d 218, 219 (1985) (driver observed collectively by operator and other officers). It is unclear whether a twenty-minute video and audio recording of the suspect would suffice. Cf. Mitchell v. Kansas Dep't of Rev., 41 Kan. App.2d 114, 200 P.3d 496, 501 (2009) (indicating that video acceptable proof of observation); People v. Boughner, 209 Mich.App. 397, 531 N.W.2d 746, 747 (1995) (rejecting video recording of defendant where view of defendant was often briefly obstructed).