**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3401-18T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

DANIEL L. WATKINS,

      Defendant-Appellant.

_____

Argued December 12, 2019 – Decided January 8, 2020

Before Judges Alvarez and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Municipal Appeal No. 18-07.

Timothy John Dey argued the cause for appellant.

Cheryl L. Hammel, Assistant Prosecutor, argued the cause for respondent (Bradley D. Billhimer, Ocean County Prosecutor, attorney; Samuel J. Marzarella, Chief Appellate Attorney, of counsel; Cheryl L. Hammel, on the brief).

PER CURIAM

Defendant Daniel L. Watkins appeals from the March 29, 2019 order of the Law Division convicting him after a trial de novo of driving while intoxicated (DWI), N.J.S.A. 39:4-50, his third such offense. We affirm.

I.

The following facts are derived from the record. At approximately 1:30 a.m. on August 13, 2017, New Jersey State Trooper Charles W. Olsen investigated an occupied vehicle parked on the shoulder of a roadway in Eagleswood Township. The details of Olsen's interaction with defendant, who was in the driver's seat, and defendant's passenger at the scene of the stop are not material to the issues raised in this appeal. It will suffice to note that based on an odor of alcohol, and defendant's slurred speech, bloodshot and watery eyes, nearly inaudible communications, and admissions, Olsen determined he had probable cause to charge defendant with DWI and arrested him.[1] Olsen did not perform field sobriety tests on defendant.

Trooper Christopher MacCutcheon arrived on scene to assist after the arrest. Olsen transported defendant to nearby barracks as MacCutcheon remained on scene for removal of defendant's impounded vehicle.

---

[1] Based on his observation of defendant's conduct with the unconscious passenger, Olsen also arrested defendant for sexual assault, N.J.S.A. 2C:14-2. That charge is not before the court.

A-3401-18T3

Olsen arrived with defendant at the barracks at 2:04 a.m. After examining defendant's mouth to confirm it contained no objects, he placed defendant in a holding cell, the walls and door of which were metal bars. After securing his weapon and other items, Olsen sat about five feet outside the holding cell door and commenced observing defendant to "make sure [he] does[ not] drink anything, does[ not] throw up in his mouth, spit or anything like that." While observing defendant, Olsen completed, with defendant's assistance, a drunk driving questionnaire. The officer marked the questionnaire, which included defendant's admission he had six beers at a Seaside Heights bar in the hours preceding the stop, as completed at 2:30 a.m.

MacCutcheon arrived at the barracks at approximately 2:15 a.m. He was to administer an Alcotest and commenced observation of defendant in the holding cell as soon as he secured his weapon and other items.

At 2:27 a.m., MacCutcheon removed defendant from the holding cell, walked behind him a few feet to another room, and administered an Alcotest. The Alcotest machine displayed an ambient air check error, indicating detection of alcohol in the room air. The error code, which was issued at 2:30 a.m., invalidated the test results.

MacCutcheon returned defendant to the holding cell, walking behind him for a few feet. The officer, standing outside the holding cell, continued to monitor defendant.

At 2:42 a.m., MacCutcheon removed defendant from the holding cell for a second time and returned him to the testing room, again walking behind him. The officer administered a second Alcotest, taking a breath sample at 2:44 a.m. MacCutcheon never lost sight of defendant from the start of his observation shortly after 2:15 a.m. to the time he administered the second Alcotest at 2:44 a.m. The test reported a blood alcohol level of 0.22%, almost three times the statutory limit for DWI.

After administration of the Alcotest, Olsen issued summonses charging defendant with DWI and three other motor vehicle code offenses.

At trial, the municipal court judge heard the testimony of both Olsen and MacCutcheon. In addition, defendant presented an expert witness. The expert initially opined, based on the pretrial discovery, that Olsen did not maintain a continuous twenty-minute observation of defendant. However, after hearing the testimony of the two officers, the expert explained,

> [w]ell, obviously, based upon their testimony, that opinion is changed because now there's a situation where there was, if you will, a handoff, with two Troopers continuing the observation period.

> . . . .

> There's no problem with the handoff. I mean . . . breath test operators in New Jersey are trained that that's a viable way of doing it.

But, the expert testified he had "concerns" that the officers may not have clearly communicated the handoff and that MacCutcheon walked behind defendant when moving him from the holding cell to the testing room and back, obstructing his view of defendant's mouth. As a result, the expert opined that the twenty-minute observation period was not conducted correctly.

With respect to whether Olsen's completion of the questionnaire while observing defendant invalidated the observation period, the expert opined as follows:

> [C]learly, the operator, even, or the officer is allowed to multi-task. [It is] not a direct staring contest at the defendant for that [twenty]-minute period of time. If that were the case, an operator, if he was alone, would never be able to administer a breath test because they could[ not] turn the machine on, they could[ not] enter the data utilizing the keyboard. . . . They[ are] allowed to do other things, but they have to at least attempt to keep the defendant within their peripheral vision and utilize their senses to ensure that these things that they[ are] trained to look for do[ not] occur. I can[not] say because someone's reading an implied consent form or because they[ are] filling out a questionnaire, they[ are] not keeping a continuous and uninterrupted observation of the defendant.

5

The municipal court judge found credible Olsen's testimony that he observed defendant at the barracks beginning at approximately 2:06 a.m. He found that Olsen was sitting immediately next to the holding cell with "nothing obstructing the view or the smell or the hearing" of the officer. In addition, the judge found credible MacCutcheon's testimony he observed defendant continuously at the barracks beginning at approximately 2:15 a.m. The court found MacCutcheon was approximately five feet from defendant and "could detect with his senses any kind of belching or anything of that nature[,]" which never occurred.

The judge rejected defendant's argument the observation period was broken when MacCutcheon walked defendant from the holding cell to the testing room. The judge observed "to move somebody from five feet is about two steps in a matter of seconds" and "even though he was in front of him, it does[ not] mean that that is a break in the [twenty]-minute observation . . . ."

The court concluded, "[t]here was observation by Trooper Olsen and/or Trooper MacCutcheon from 2:04 until . . . 2:44. So no question as to the [twenty]-minute observation." Given that defendant did not otherwise contest the validity of the test results or deny he was operating the vehicle, the judge

stated he had "no problem finding beyond a reasonable doubt, based on those [test] readings, that [defendant] was guilty of driving under the influence."

The court sentenced defendant to a 180-day term of incarceration, with credit for forty-eight days he spent in in-patient alcohol abuse treatment, and a ten-year suspension of his driver's license, followed by a three-year period with an ignition interlock device. The remaining motor vehicle code charges were dismissed. The municipal court stayed defendant's sentence pending his appeal to the Law Division.

Following a trial de novo in the Law Division, Judge Michael T. Collins convicted defendant of DWI. After finding the testimony of the officers to be credible, Judge Collins concluded

> regardless of whether I incorporate Olsen into this, or whether I rely strictly on M[a]cCutche[o]n's involvement, I do find that there has been observation within the [twenty-]minute requirement . . . . The distance between the officers, who I find to be trained, was such that they would have been in a position geographically to observe and/or sense anything that would have tainted the results. And M[a]cCutche[o]n's testimony was that that was not the case.
>
> So I am going to find that the results of the Alcotest were reliable. Obviously that would be the second test that was run at 2:42. And I[ am] going to uphold the lower [c]ourt's conviction.

On March 29, 2019, Judge Collins entered an order upholding defendant's conviction and staying his sentence pending appeal to this court.

This appeal followed. Defendant makes the following arguments for our consideration:

> THE POLICE DID NOT OBSERVE DEFENDANT FOR THE REQUIRED TWENTY MINUTES PRIOR TO ADMINISTRATION OF THE ALCOTEST RENDERING THE READING NULL AND VOID. SANS SFST'S [SIC] DANIEL WATKINS CANNOT BE CONVICTED OF DRIVING WHILE INTOXICATED AS PER STATE V. CHUN.
>
> A. SPOLIATION/TAMPERING/TAILORING/ ELUSION OF RECLUSION.
>
> B. THE TWENTY-MINUTE OBSERVATION PERIOD COULD NOT HAVE BEEN ADHERED TO HERE BY THE OFFICERS' OWN TESTIMONY.
>
> C. THE LAW DIVISION EQUATED MERE GEOGRAPHICAL PROXIMITY WITH THE "ATTENTIVE" REQUIREMENT.

## II.

On appeal from a municipal court to the Law Division, the review is de novo on the record. R. 3:23-8(a)(2). The Law Division judge must make independent findings of fact and conclusions of law but defers to the municipal court's credibility findings. State v. Robertson, 228 N.J. 138, 147 (2017).

We do not, however, independently assess the evidence. State v. Locurto, 157 N.J. 463, 471-72 (1999). Our "standard of review of a de novo verdict after a municipal court trial is to determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole." State v. Ebert, 377 N.J. Super. 1, 8 (App. Div. 2005) (internal quotations marks and citation omitted).

The rule of deference is more compelling where, as here, the municipal and Law Division judges made concurrent findings. Locurto, 157 N.J. at 474. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid. "Therefore, appellate review of the factual and credibility findings of the municipal court and the Law Division 'is exceedingly narrow.'" State v. Reece, 222 N.J. 154, 167 (2015) (quoting Locurto, 157 N.J. at 470). But, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

In State v. Chun, 194 N.J. 54, 79 (2008), the Court explained, with respect to Alcotests,

9

[o]perators must wait twenty minutes before collecting a sample to avoid overestimated readings due to residual effects of mouth alcohol. The software is programmed to prohibit operation of the device before the passage of twenty minutes from the time entered as the time of the arrest. Moreover, the operator must observe the test subject for the required twenty-minute period of time to ensure that no alcohol has entered the person's mouth while he or she is awaiting the start of the testing sequence. In addition, if the arrestee swallows anything or regurgitates, or if the operator notices chewing gum or tobacco in the person's mouth, the operator is required to begin counting the twenty-minute period anew.

The twenty-minute observation period must be established by clear and convincing evidence, but need not be conducted by the officer who administered the Alcotest. State v. Ugrovics, 410 N.J. Super. 482, 489-90 (App. Div. 2009). In addition,

[w]hat constitutes observation must be determined in view of the purpose of the observation requirement: to assure that the suspect has not ingested or regurgitated substances that would confound the results. An officer's observation should be of the sort capable of detecting contamination if it actually occurred. Thus, an officer who looks away must be close enough to detect contamination through aural or olfactory senses.

[State v. Filson, 409 N.J. Super. 246, 261 (Law Div. 2009).]

Having carefully reviewed defendant's arguments in light of the record and applicable legal principles, we affirm the March 29, 2019 order of the Law

10

Division. The record contains ample support for the trial court's findings of fact and conclusions of law regarding the officers' observation of defendant for twenty minutes prior to administration of the Alcotest resulting in defendant's conviction. We see no basis for disturbing the conclusions of the two judges who reviewed the evidence and found the officers credibly testified that either or both of them were sufficiently close to defendant in the twenty minutes preceding administration of the 2:44 a.m. Alcotest to detect any event that could confound the test results. To the extent we have not specifically addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed. The stay of defendant's sentence is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3401-18T3