**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1144-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RIGOBERTO BRUNO,

    Defendant-Appellant.

_____

Submitted April 20, 2021 – Decided June 29, 2021

Before Judges Moynihan and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Municipal Appeal No. 18-008.

Albert P. Mollo, attorney for appellant.

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Maura K. Tully, Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

Charged with numerous driving infractions, defendant Rigoberto Bruno admitted he drank eight twelve-ounce cans of beer over a five-hour period and conditionally pleaded guilty to driving while intoxicated (DWI), N.J.S.A. 39:4-50, after the municipal court conducted a N.J.R.E. 104 hearing and rejected defendant's argument that the Alcotest results, showing defendant's blood alcohol level was 0.17 percent,[1] was inadmissible because defendant had not been observed for the twenty-minute period before providing a breath sample for the Alcotest, see State v. Chun, 194 N.J. 54, 79, cert. denied, 555 U.S. 825 (2008), and the State had not provided in discovery videotape recordings from the processing room in police headquarters where the twenty-minute observation had taken place.

Defendant's first municipal appeal resulted in the Law Division judge's remand order directing the municipal court judge to procure the "testimony from [Eatontown Special Police] Officer James Rolly regarding the alleged destruction of the surveillance videos . . . and the police department's evidence[-]retention procedures" for video-surveillance footage. Rolly was assigned to the Records Bureau and testified his "role [was] to assimilate all the records that

---

[1] The Alcohol Influence Report (AIR) was not provided in the appellate record. During the plea proceedings, the municipal court judge mentioned only one reading, ostensibly the same for both samples.

would correspond with the case[] and mail them out to the defense attorney." The remand order also required the municipal court judge to "reconsider the [N.J.R.E.] 104 hearing decision" and "articulate whether . . . an adverse inference is being utilized and why when considering the reasons the surveillance videos were destroyed and what impact the destruction has on the totality of the circumstances [(sic)]."

The municipal court judge considered Rolly's testimony at the remand hearing, applied an adverse inference when evaluating the testimony relating to the procedures that preceded the Alcotest and, nevertheless, found the officers—the arresting officer and the Alcotest operator—followed proper procedures, including the twenty-minute pre-test observation of defendant; the judge concluded the State had met its burden to establish the admissibility of the test results.

Following a trial de novo in the Law Division, the judge, adhering to Rule 3:23-8(a)(2), made independent findings of fact, giving "due regard to the municipal [court] judge's opportunity to view the witnesses and assess credibility," and reviewed the municipal court judge's conclusions of law de novo, see State v. Golin, 363 N.J. Super. 474, 481 (App. Div. 2003), based on the record from the municipal court, see State v. States, 44 N.J. 285, 293 (1965).

A-1144-19

The Law Division judge determined "the State . . . met its burden of proving that [d]efendant was observed for the required twenty-minute period, and . . . the Alcotest results were properly admitted"; the judge found defendant guilty of DWI.

Defendant appeals his conviction, arguing:

> THE STATE'S FAILURE TO PRESERVE AND PRODUCE VIDEO EVIDENCE CONSTITUTES A STEIN[2] VIOLATION[.]
>
> > A. Dismissal [I]s Warranted[.]
> >
> > B. The Alcotest Reading Should [B]e Suppressed[.]
> >
> > > 1. The Observation Period Was Not [Twenty] Minutes[.]
> > >
> > > 2. There Was No Observation During the Testing Process[.]
> > >
> > > 3. Credibility Determinations Weigh in Favor of Appellant[.]

On appeal, we "consider only the action of the Law Division and not that of the municipal court," State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001), and determine "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record," State v. Johnson,

---

2 State v. Stein, 225 N.J. 582 (2016).

42 N.J. 146, 162 (1964); see also State v. Locurto, 157 N.J. 463, 471 (1999); but our review of legal determinations is plenary, see State v. Handy, 206 N.J. 39, 45 (2011). Under that lens, we affirm.

We reject defendant's argument that credibility determinations weighed in his favor. Where, as here, the municipal court and Law Division judges made concurrent findings, "[u]nder the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Locurto, 157 N.J. at 474. "Therefore, appellate review of the factual and credibility findings of the municipal court and the Law Division 'is exceedingly narrow.'" State v. Reece, 222 N.J. 154, 167 (2015) (quoting Locurto, 157 N.J. at 470). Unless there is an obvious and exceptional showing of error, we will not disturb the Law Division's findings when the municipal court and Law Division "have entered concurrent judgments on purely factual issues." Ibid. (quoting Locurto, 157 N.J. at 474).

Both judges' credibility findings, particularly those well explained by the municipal court judge in his written decisions both before and after remand, are well supported by the record. The municipal court judge, in making his comprehensive credibility findings, considered and addressed defendant's

present arguments, including those regarding defendant's lack of eye contact during his testimony, defendant's use of a translator during testimony, the officers' familiarity with courtroom testimony and defendant's failure to notice the clock in the processing room, distinguish between the processing and Alcotest rooms and identify the officer whom he avers left him alone during the observation period.

The municipal court judge "assume[d], for the sake of argument, as defense counsel suggest[ed], that the reason [defendant] did not look directly towards the [c]ourt was due to the fact that he was using an interpreter." The judge found "the substance of [defendant's] testimony lacked the necessary specifics to find his version of events is what [had] occurred." The judge agreed that defendant's use of a translator was a consideration "when determining [defendant's] demeanor, tone and body language" and recited his experience in communicating through translators. But the judge found defendant's "lack of eye contact was not attributable to the fact that he was speaking through a translator," noting defendant "was sitting at counsel table almost directly across" from the judge's location and "[t]he translator was not positioned in such a manner that it would not have been possible for him to make eye contact with the [c]ourt" while utilizing the translator's services.

A-1144-19

The judge also acknowledged the officers were more comfortable in the courtroom: "These are officers, you know, they come in all the time. They're a little bit more comfortable. And yes, that's true too. The more you're in a courtroom, the more comfortable you are." But the judge, nevertheless, found other considerations, including eye contact, more compelling.

As to the officers' failure to constantly observe defendant for twenty minutes, the municipal court judge, despite drawing an adverse inference against the officers, found each officer's testimony was detailed and consistent with the other's even though they were sequestered. The judge also found defendant's contention that he was left alone four or five times during the observation period was undermined by several factors, including his inability to identify which of the officers left him alone and specify in which room he was left alone. The judge noted that testimony established the processing and Alcotest rooms were closely proximate, the area in headquarters was "not a labyrinth" and "there was a large working clock in the room where [defendant] was handcuffed," described by the judge as the "one 'familiar' thing in that environment . . . that the [Spanish-speaking defendant] could read"; nevertheless, defendant could not tell the "hour of the day he was allegedly left alone" or even "narrow down the time of day" when "asked if he was left alone at [1:00, 2:00, 3:00 or 4:00]."

7

To be sure, these were but some of the facts found to support what the Law Division judge describes as "clear credibility determinations" which that judge, giving "due, although not necessarily controlling, regard," saw "no reason to disturb." Under our more focused review, neither do we. We discern no "very obvious and exceptional showing of error" requiring us to overturn the Law Division judge's credibility findings when the municipal court and Law Division "have entered concurrent judgments on purely factual issues." Reece, 222 N.J. at 166 (quoting Locurto, 157 N.J. at 470). To the extent not addressed, we determine defendant's additional arguments regarding the judges' credibility findings to be without sufficient merit to warrant further discussion. R. 2:11-3(e)(2).

After hearing Rolly's testimony at the remand hearing, the municipal court judge determined an adverse inference should be drawn because the State had not preserved and provided defendant with the videotape surveillance footage from the processing room. As the Law Division judge observed in his written decision, Rolly provided defendant with discovery the day after he received defense counsel's initial discovery demand which was devoid of any specific request for video recordings. Under the then-existing Eatontown Police Department policy, recordings were produced in discovery only if requested. As

the Law Division judge found, that policy changed "just months" after defendant's August 2017 arrest. That February 19, 2018 written policy memorandum required "the video of the processing room [to be] preserved and placed in the case file" when requested by defense counsel.

The Law Division judge also considered the municipal court judge's observation that "the State did not act in bad faith" in failing to provide the video, crediting Rolly's testimony that he had first become aware of the specific request for the video recording when he received an email from the municipal prosecutor on December 15, 2017, regarding defense counsel's subsequent discovery request which specifically included video recordings. By that time the processing room video of defendant's observation period had been automatically deleted from the server after sixty days. The Law Division judge also assessed the municipal court judge's finding that "[d]efendant failed to offer proof to show that a specific discovery request for this video evidence was ever sent" based on defense counsel's representation to the municipal court judge that counsel's usual practice was to fax discovery requests, but counsel could not provide a fax confirmation page or other proof the later discovery request was served.

 A-1144-19

Though the Law Division judge did not directly address defendant's argument that the failure to provide the video required dismissal of the case, he implicitly approved the adverse inference drawn by the municipal court judge. Under the circumstances found by the judges, we agree an adverse inference was the appropriate remedy for the unintentional deletion of the video recording before defendant had an opportunity to view it. See State v. Richardson, 452 N.J. Super. 124, 137 (App. Div. 2017) ("We recognize that trial courts are vested with the discretion to fashion an appropriate sanction for a violation of discovery obligations."). "[N]either proof of bad faith, nor a showing that evidence is exculpatory, is essential to demonstrate a discovery violation or to justify an adverse inference charge." Id. at 138. "Bad faith is an essential element of a due process violation where the evidence is potentially useful. On the other hand, '[s]uppression of requested exculpatory evidence violates due process, regardless of the prosecution's good faith.'" Ibid. (alteration in original) (citations omitted) (quoting State v. Robertson, 438 N.J. Super. 47, 67 (App. Div. 2014), decision reached on other grounds, 228 N.J. 138 (2017)).

Drawing the adverse inference well protected defendant's right to a fair trial; the "drastic remedy" of dismissal would have been inappropriate. State v. Clark, 347 N.J. Super. 497, 508 (App. Div. 2002). Dismissal of a charge "is the

last resort because the public interest, the rights of victims and the integrity of the criminal justice system are at stake." State v. Ruffin, 371 N.J. Super. 371, 384 (App. Div. 2004). We see no reason not to apply that tenet in DWI cases.

Defendant's additional argument regarding the discovery violation, particularly the skewed contention that Rolly was instructed by the municipal prosecutor not to "produce videos in prior DWI cases," is without sufficient merit to warrant discussion. R. 2:11-3(e)(2).

The proofs related to the Alcotest results, accepted as credible by both judges notwithstanding the adverse inference, established that defendant was observed for the required twenty-minute pre-test period. Finding defendant's testimony that he was left alone during the observation period not credible, the judges accepted the testimony of the arresting officer and the Alcotest operator. The Law Division judge found the Alcotest operator testified defendant

> was not left alone at any time during the period, which began at 2:05 [a.m.]. During the first ten minutes, [the arresting officer] testified that he was "in and out of the room," but [the Alcotest operator] was always present. [The arresting officer] further testified that he took over observation duties at 2:15 [a.m.[3]], when [the Alcotest operator] went into the Alcotest room to prepare for taking the breath samples, which was close enough for

---

[3] The Law Division judge's written decision sets this time as "2:15pm," an obvious typographical error considering the judge found the times before and after that time were early-morning—"a.m."—times.

him to see if [the arresting officer] ever left [d]efendant alone. [The arresting officer] stated that he was positioned directly across from [d]efendant, about ten feet away, and did not observe any Alcotest[-]prohibited behavior, i.e.[,] burping, regurgitating, etc. Subsequently, [the Alcotest operator] returned to tell [the arresting officer] that his watch indicated the time was 2:25 [a.m.], and that the twenty-minute period was over.

The Law Division judge found that testimony "clearly demonstrates that [d]efendant was observed for the required twenty-minute observational period." There is no reason to disturb those findings that "could reasonably have been reached on sufficient credible evidence present in the record." Johnson, 42 N.J. at 162; see also Locurto, 157 N.J. at 471.

Even if the twenty-minute period was gauged by the Alcotest operator's watch, without reference to the second hand which, as defendant argues, could have resulted in a total time of less than twenty minutes, defendant was observed for the additional time—"no more than a minute . . . [a] minute and a half at the most" according to the arresting officer—it took to unlock defendant's handcuffs and walk him took the Alcotest room. During that period the arresting officer observed defendant up to the time he gave his first breath sample and did not see defendant regurgitate, burp or place anything in his mouth. The Alcotest

operator also testified defendant did not regurgitate, place anything in his mouth or cough while in the Alcotest room prior to producing his first breath sample.

Although that testimony establishes that defendant was observed while in the Alcotest room, we reject defendant's argument that observation during the testing procedure is required. Chun pointedly requires operators to "wait twenty minutes before collecting a sample" to avoid a contaminated reading. 194 N.J. at 79. "[T]he operator must observe the test subject for the required twenty-minute period of time to ensure that no alcohol has entered the person's mouth while he or she is awaiting the start of the testing sequence." Ibid. (emphasis added). "With respect to this critical twenty-minute period, the key concern of the Court in Chun was to ensure that the test subject did not ingest, regurgitate or place anything in his or her mouth that could affect the reliability of the test." State v. Ugrovics, 410 N.J. Super. 482, 489 (App. Div. 2009).

We reject defendant's argument that State v. Filson, 409 N.J. Super. 246 (Law Div. 2009)—a Law Division case and not, as defendant states in his merits brief, an Appellate Division decision—requires proof of observation during the Alcotest procedure. The court in Filson considered the Chun Court's mandate that an Alcotest operator

> wait twenty minutes before collecting a sample to avoid overestimated readings due to residual effects of mouth

alcohol. The software is programmed to prohibit operation of the device before the passage of twenty minutes from the time entered as the time of the arrest. Moreover, the operator must observe the test subject for the required twenty-minute period of time to ensure that no alcohol has entered the person's mouth while he or she is awaiting the start of the testing sequence. In addition, if the arrestee swallows anything or regurgitates, or if the operator notices chewing gum or tobacco in the person's mouth, the operator is required to begin counting the twenty-minute period anew.

[194 N.J. at 79; see also 409 N.J. Super. at 255-56.]

The Filson court determined that the Court adopted the "protocol that [an officer] must observe the testing subject for twenty minutes before starting the test, and then during the testing, must assure that the subject does not burp or regurgitate or otherwise contaminate the breath sample."[4] 409 N.J. Super. at 255.

---

[4] In his merits brief, defendant adds a word to a portion of the quote: "must observe the testing subject for twenty minutes before starting the test, and then during the testing, and must assure that the subject does not burp or regurgitate or otherwise contaminate the breath sample." The underscored word is not part of the court's opinion. We are not persuaded to adopt defendant's position because of his addition of "and," which we choose to characterize as a typographical error and not a conscious attempt to sway the court with an added word that he contends changes the meaning of the sentence. We do check source quotes.

A-1144-19

In implementing the twenty-minute observation period, the <u>Chun</u> Court recognized that the Alcotest is not subject to operator influences and observed the few tasks required of an Alcotest operator

> now consist[] of observing the subject to ensure that twenty minutes has passed and to be certain that the subject has neither swallowed nor regurgitated any substances during that time that would influence the test results; inputting and verifying the accuracy of the identifying information needed to start the sequence; changing the control solution if the machine alerts him to do so; attaching a new mouthpiece; reading the instructions about how to blow into the machine; observing the LED screen and following its prompts; and observing the subject to ensure that he or she actually provides a sample. There are no meters to read, no dials to turn, and if the machine detects an error, the error is reported and no test results are derived. The operators are not able to alter or affect the software that governs the performance of the device and cannot fix the machine should a repair be needed.
>
> [194 N.J. at 140.]

We discern no difference between <u>Chun</u>'s holding that the twenty-minute observation period applies only to the pre-test period and the <u>Filson</u> court's reading of the Court's decision.

Even if defendant's reading of <u>Filson</u> is correct, we disagree that the State must prove continued observation during the testing period and adhere to our holding in <u>Ugrovics</u>. As Judge Fuentes observed in <u>Ugrovics</u>, the <u>Chun</u> Court's

15

recognition of the "lesser role" played by an Alcotest operator than that played by the operators of prior tests that measured intoxication resulted in the State's burden at trial to "establish, by clear and convincing evidence, that, during the twenty-minute period immediately preceding the administration of the test, the test subject did not ingest, regurgitate or place anything in his or her mouth that may compromise the reliability of the test results."  410 N.J. Super. at 489-90 (footnote omitted); see also Chun, 194 N.J. at 140.  That mandate did not extend to the testing period.

As the Law Division judge concluded, the State met that burden and established that the Alcotest operator "ensure[d] that the procedures leading to the actual taking of the test [were] strictly followed."  Ugrovics, 410 N.J. Super. at 490.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1144-19