**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4018-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CODY J. SELLS,

    Defendant-Appellant.

_____

Submitted January 13, 2026 – Decided February 12, 2026

Before Judges DeAlmeida and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Municipal Appeal No. 2022-09.

Law Offices of Sklar Smith-Sklar, attorneys for appellant (Keith D. Sklar, on the brief).

Janetta D. Marbrey, Mercer County Prosecutor, attorney for respondent (Colin J. Rizzo, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a trial de novo in the Law Division, defendant Cody J. Sells appeals his conviction for driving while intoxicated (DWI), N.J.S.A. 39:4-50. We affirm.

I.

On November 24, 2021, at about 12:40 a.m., Princeton Police Officer Dante Focarelli was stationed in a patrol vehicle on Nassau Street using a radar device to detect speeding infractions. The speed limit in that area of Nassau Street was twenty-five miles per hour.

Focarelli's radar device detected a vehicle traveling thirty-nine miles per hour. A reading seconds later indicated the vehicle was traveling at forty-one miles per hour.

Focarelli maneuvered the patrol car behind the vehicle, which he followed as it turned on to University Place. The officer observed the vehicle move rapidly toward the double yellow line and then toward the curb on the passenger side in quick succession. Focarelli described the vehicle's movements as "like a jerking of the wheel in both directions." The officer then observed the vehicle's front and back driver's side tires travel over the double yellow line by about five inches for thirty to fifty feet of travel and then saw the vehicle

accelerate. Focarelli suspected the driver was intoxicated and activated his emergency lights and sirens to initiate a stop.

The vehicle traveled without pulling over until it reached a convenience store parking lot. Focarelli approached the vehicle and identified defendant as the driver. Defendant told the officer he was coming from a local bar and heading home. Because defendant's driver's license and vehicle registration had different addresses, the officer asked defendant where he lived. Defendant first stated the name of a road with no house number. He then stated the name of a town and nothing further. It was later determined defendant lived on a street other than the one he named and in a town other than the one he named.

Focarelli observed defendant had bloodshot, watery eyes, droopy eyelids, slow and slurred speech, and deliberate hand movements. The officer also detected an odor of alcohol emanating from defendant.

When asked if he knew why he was stopped, defendant said he "ran through a stop sign." In response to the officer stating he was stopped for speeding, defendant said he had been traveling forty-five miles per hour in what he thought was a thirty-mile-per-hour zone. Defendant admitted he recently consumed "two holiday brew style beers" that were eight percent alcohol by

3

volume. Defendant said he was "scared because [he] had a few drinks" and admitted he knew "this is probably bad."

Focarelli administered the alphabet and counting tests to defendant while defendant was still in his vehicle. Defendant's performance increased the officer's suspicion he was intoxicated. Because Focarelli was trained but not certified to administer field sobriety tests, he requested Sergeant Christopher Craven respond to the scene. Craven arrived shortly thereafter, as did Patrolman Ryan McDermott. Both Craven and McDermott were certified to administer the tests.

Focarelli asked defendant to exit his vehicle. As he exited, defendant took what Focarelli described as a "large . . . fall step almost to . . . kind of regain his balance." McDermott administered the horizontal gaze nystagmus (HGN) test to defendant, which Craven supervised. Focarelli observed defendant, after being instructed to stand still, swaying in multiple directions and rocking back and forth during the HGN test.

Focarelli administered the walk-and-turn and one-leg-stand tests with Craven and McDermott observing. While being given instructions, defendant nearly fell over, stumbled off the starting line, and said, "I already fell." Focarelli testified there are eight indicators of impairment that can be observed

A-4018-23

during the walk-and-turn test. Observation of any two indicators suggests impairment. Focarelli observed seven indicators during defendant's test: failing to maintain foot position or balance during instructions; stopping walking before the test is complete; failing to walk heel-to-toe on every step; stepping off the straight line; raising arms more than six inches from his sides to maintain balance; taking the wrong number of steps; and failing to turn and walk back.

Focarelli testified there are four indicators of impairment that can be observed during the one-leg-stand test. Observation of any two indicators suggests impairment. Focarelli observed three indictors during defendant's test: swaying while balancing; putting the raised foot on the ground; and using arms to balance. The officer stopped the test for safety reasons because he feared defendant would fall over. Focarelli placed defendant under arrest for suspicion of DWI and transported him to police headquarters for an Alcotest.[1]

Focarelli was not certified to administer an Alcotest. Craven, who was certified to administer an Alcotest, also returned to headquarters. Craven checked defendant's mouth twice to ensure it was empty and began the

---

[1] Focarelli's patrol vehicle mounted camera captured his pursuit of defendant's vehicle and what transpired during the stop. Focarelli's and Craven's body worn cameras captured what transpired during the stop. Portions of the three recordings were played and admitted into evidence at the municipal court trial. The parties, however, did not submit the recordings to this court.

A-4018-23

mandatory twenty-minute observation period. Craven sat directly across from defendant, who was handcuffed behind his back, and maintained eye contact while observing him. During the twenty-minute period, Craven did not observe defendant burp, regurgitate, vomit, or place anything in his mouth.

Focarelli was present during most of the observation period, although he left the room once, and was sometimes engaged in entering information about defendant's arrest into a computer. Focarelli did not observe defendant burp, regurgitate, vomit, or place anything in his mouth.[2]

At the conclusion of the twenty-minute period, Craven directed Focarelli to take over observation of defendant while Craven prepared the Alcotest machine in an adjoining room. Focarelli escorted defendant to the Alcotest room almost immediately thereafter. Focarelli testified as follows. He maintained eye contact with defendant as he walked over to him to escort him to the Alcotest room. He walked alongside defendant until they approached the Alcotest room. As they entered the room, Focarelli moved behind defendant, but within a few feet of him, to permit defendant to walk through the narrow doorway. Once the

---

[2] Craven's body worn camera captured his observation of defendant at police headquarters. Although the recording was played and admitted into evidence during the municipal court trial, the parties did not submit a copy of the recording to this court.

A-4018-23

two enter the room, Focarelli again faced defendant and observed him during administration of the Alcotest. Craven confirmed Focarelli's testimony.

Focarelli testified that during his observation of defendant he did not observe defendant burp, regurgitate, vomit, or place anything in his mouth. Defendant testified he burped while Craven was observing him and silently hiccupped or suppressed regurgitation while being escorted to the Alcotest room. He acknowledged Focarelli was close enough to touch him during the escort.[3]

---

[3] During the municipal court trial, the parties referred to a video camera in "booking area seven" of the Princeton Police Department headquarters which recorded the observation of defendant, his escort to the Alcotest room, and the administration of the Alcotest. At the municipal court trial, defense counsel said he intended to introduce the recording from the booking area camera as evidence. However, he did not bring a copy of the recording to trial and his attempt to download the video during the trial was not successful. The recording was, therefore, not played at the municipal court trial or admitted into evidence. Defense counsel's attempt to rely on the booking area recording in his post-trial submission was rejected by the municipal court because the recording had not been admitted into evidence. Despite these facts, defense counsel submitted a copy of the recording to the Law Division on appeal to that court. Nothing in the record indicates the Law Division judge supplemented the municipal court record to include the booking area recording. R. 3:23-8(a)(2). Defendant submitted a copy of the booking area recording to this court and relies on it in his brief. Because the booking area recording was not admitted into evidence in the municipal court or Law Division, it not part of the appellate record and was not considered by this court. See Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 2:5-4(a) (2026) ("It is, of course, clear that in their review the appellate courts will not ordinarily consider evidentiary material which is

7

The Alcotest produced a reading of .25 percent blood alcohol content (BAC), over four times the .08 percent BAC statutory threshold to constitute per se proof of DWI. Focarelli charged defendant with DWI, N.J.S.A. 39:4-50.[4]

On August 3, 2022, defense counsel failed to appear at the scheduled time for trial in the municipal court. After he was contacted by court personnel, defense counsel appeared and had the following exchange with the court:

> [DEFENSE COUNSEL]: Your Honor, I think when we spoke yesterday I told you on the phone that there was a likely possibility this may happen. I showed up here today . . . out of respect to you and the State, so you can see my physical condition, the fact that I am not fit to try a case. . . . I don't know what I have. It might [be] the [COVID-19] variant . . . . I'm heading to the doctor from here to get tested.
>
> This cannot possibly be that important that the State is going to force me to try a case when I'm not physically able to. I'm just not. You were made aware of this, the State was made aware of this yesterday when we were on the phone call that I had been exhibiting symptoms. I wasn't sure what it was. Last night it got worse. This morning when I called in, your court administrator said I can't adjourn it. . . . .

---

not in the record below by way of adduced proof, judicially noticeable facts, stipulation, admission[,] or recorded proffer of excluded evidence.").

[4] Focarelli also charged defendant with speeding, N.J.S.A. 39:4-98, failure to keep right, N.J.S.A. 39:4-82; reckless driving, N.J.S.A. 39:4-96; and failure to report an address change, N.J.S.A. 39:3-36. Those charges are not before us.

THE COURT:  Do you have . . . a letter from a doctor?

[DEFENSE COUNSEL]:  Not yet.  I'm going to see one as soon as we're done.

THE COURT:  [A]s I told you yesterday when you wanted an adjournment because you were submitting an expert report at, I think, 3:30 p.m. yesterday that this case was going forward with or without you, with or without your client.  I anticipated something like this would happen.  That's why I told you specifically that this case is being scheduled today.  It's going forward today.

[DEFENSE COUNSEL]:  And I agreed with Your Honor.

. . . .

THE COURT:  [I]f this were the first time that you had requested an adjournment . . . I may decide differently.

[DEFENSE COUNSEL]:  I believe it is.

THE COURT:  Yesterday you asked for an adjournment based on submitting an expert report at 3:30 p.m. the day before trial.  And I'd asked you numerous times if discovery was complete.  March 7th you told me discovery was complete.  I asked you numerous times whether you were going to retain an expert, you told me you [were] not.

. . . .

9

[DEFENSE COUNSEL]: . . . I did not want you to think that this was preplanned in any way, it wasn't. . . .

. . . I can't be forced to try a case when I'm not physically able to do [so] and that's what you want to do.

THE COURT: I'm not forcing you to try the case . . . . I'm just telling you this case is going forward with or without you as I . . . told you several weeks ago.

[DEFENSE COUNSEL]: That's a distinction without a difference.

. . . .

THE COURT: Let's proceed.

. . . .

[DEFENSE COUNSEL]: I want it on the record that . . . I am not physically able to try the case, but I will stay.

The trial then proceeded.

Focarelli, Craven, and defendant testified. The officers described the stop, field testing, observation period, administration of the Alcotest, and Alcotest results as detailed above. Defendant admitted drinking two beers with eight percent alcohol content shortly before entering his vehicle and driving. He testified beer is typically served in an eight-ounce glass, but his friends who worked at the bar served his two beers in pint-size (sixteen-ounce) glasses.

10

Defendant testified he had not eaten all day and drank the two beers "pretty quickly" within an hour.

Defendant testified that before he went to the bar, he visited five or six clients in the Princeton area in his role as a wine importer. Defendant admitted he tasted samples from five or six bottles of wine with most of his clients to facilitate sales. Defendant testified a sample size was "just enough to get your tongue covered" and that he spit out what remained of each sample. Defendant also admitted he knew he was under the influence of alcohol while driving.

In his closing argument, defense counsel conceded defendant's performance on the standard field sobriety tests was sufficient to support a conviction for DWI. However, he argued the .25 percent BAC Alcotest result was inadmissible because the officers did not observe defendant for a continuous twenty-minute period before administering the test.[5]

On August 9, 2022, the municipal court issued an oral decision and accompanying order convicting defendant of DWI. The court found the mandatory twenty-minute observation period established in State v. Chun, 194 N.J. 54, 79 (2008), was intended to ensure four things: (1) no alcohol has

---

[5] Counsel's argument was an attempt to avoid the enhanced penalties for a DWI conviction based on a BAC of .15 percent or higher. See N.J.S.A. 39:4-50(a)(1)(ii).

entered the suspect's mouth; (2) the suspect has not swallowed anything; (3) the suspect has not vomited or regurgitated; and (4) there is no chewing gum, tobacco, or other foreign object in the suspect's mouth. The court rejected defendant's argument the observation period is designed to detect a suspect's silent hiccup. In addition, the court relied on the holding in State v. Filson, 409 N.J. Super. 246, 258 (Law Div. 2009), in which Judge Ostrer, then a trial court judge, held the twenty-minute observation "need not consist only of eye-to-eye contact." As the Filson court explained, the observation requirement will be satisfied where "the observer [is] attentive, trained, and close enough to the subject to perceive through other senses a tainting event if one occurs." Ibid.

The municipal court found the State proved by clear and convincing evidence the officers complied with the twenty-minute observation requirement. The court based its decision on "the testimony of the officers and by the video which we watched on two separate occasions."[6] The court found the record did not support defendant's claims the twenty-minute period was interrupted by his burp, silent hiccup, or any other tainting event. The court also rejected defendant's argument Focarelli could not observe defendant because he was not

---

[6] The court was referring to the recording from Craven's body worn camera, which was played twice during the trial.

A-4018-23

certified to administer an Alcotest. The court found such certification was not necessary to conduct an observation. The court also found Focarelli was attentive and always close enough to defendant, even when he was behind him during the escort to the Alcotest room, to perceive through his senses whether defendant regurgitated, vomited, or placed something in his mouth. The court found the officers' observation of defendant was "meticulous."

Based on the .25 percent BAC reading, the court found defendant guilty of DWI beyond a reasonable doubt, his first such offense. The court sentenced defendant to a six-month loss of driving privileges, twelve hours in the Intoxicated Driver Resource Center (IDRC), and installation of an ignition interlock device for a fifteen-month period. The court stayed the sentence pending defendant's appeal to the Law Division.

Following a trial de novo, a Law Division judge convicted defendant of DWI.[7] In a February 7, 2024 oral decision, the judge found both officers' testimony credible and concluded there was no interruption in their twenty-

---

[7] In State v. Kashi, we held a Law Division judge's role is neither to affirm nor reverse the municipal court's rulings. 360 N.J. Super. 538, 545 (App. Div.), aff'd o.b., 180 N.J. 45 (2004); see also State v. Robertson, 228 N.J. 138, 147 (2017). Here, although the Law Division judge incorrectly "denied" defendant's appeal of his municipal court conviction, "affirmed" the municipal court decision, and "modified" defendant's sentence, we are satisfied the judge made her own independent findings of fact based on the record before the municipal court.

minute observation of defendant. The judge found Craven credibly testified he observed defendant for twenty minutes and detected no burp, regurgitation, vomiting, or foreign object in defendant's mouth. In addition, the court found "based on [its] review of the video footage," Focarelli walked behind defendant for five seconds while escorting him to the Alcotest room and wore a face mask positioned below his nose.[8] The judge also found Focarelli was sufficiently trained to observe defendant, even though not certified to administer the Alcotest.

The judge found the .25 percent BAC Alcotest result was sufficient to prove beyond a reasonable doubt defendant was guilty of DWI. The judge separately found the field sobriety test results were sufficient to find defendant guilty of DWI beyond a reasonable doubt.

The judge rejected defendant's argument his counsel's performance at trial was ineffective because the municipal court refused his adjournment request. The judge noted defendant identified no specific instances in which he alleged

---

[8] It appears the Law Division judge relied on the booking area recording, which was not admitted into evidence, to make these findings. Testimony at the municipal court trial regarding Craven's body worn camera recording, the only recording of events at police headquarters admitted into evidence, did not refer to the position of Focarelli's mask or the specific length of time he was behind defendant while escorting him to the Alcotest room.

A-4018-23

his trial counsel's performance was ineffective. Nor did defendant identify any instance in which his counsel's performance, if different, would have changed the outcome of the trial. In addition, the judge found defense counsel made objections and arguments during the municipal court trial, effectively cross-examined the State's witnesses, and rehabilitated portions of defendant's testimony on redirect examination. The judge also noted during the municipal court trial, defense counsel mentioned other legal matters he intended to attend later that day and the next day, suggesting he considered himself well enough to represent his clients.[9]

On July 19, 2024, the judge sentenced defendant to a five-month loss of driving privileges, twelve hours in the IDRC, and installation of an ignition interlock device for a nine-month period. The judge stayed the sentence for forty-five days to permit defendant to file an appeal in this court. A July 19,

---

[9] Defense counsel submitted to the Law Division judge a photograph of a positive result from a COVID-19 test he claims to have taken after the municipal court trial. The Law Division judge found the photograph "not verifiable with the date nor the photographer." Although the photograph was not admitted into evidence in the municipal court and not considered by the Law Division judge, defendant included a copy in the appendix he filed with this court. The photograph is not part of the record on appeal and was not considered by this court.

A-4018-23

2024 order memorialized the judge's decision and sentence. This appeal followed.

On October 24, 2024, we denied defendant's motion to stay his sentence. Our order states "[d]efendant has not demonstrated the standard required for a stay of his sentence under Rule 2:9-4. See State v. Robertson, 228 N.J. 138 (2017)."

On January 27, 2025, the municipal court held what it described as a "six-month status check." At the start of the hearing, the court acknowledged defendant had filed an appeal in this court. Defense counsel informed the court he moved before this court for a stay of sentence. He described our decision as follows: "They denied that appeal (sic) under State v. Robertson, and then told me that the license had never been suspended in the first place. So, that's why it was denied. There's no reason to stay a suspension that's never occurred." There is no support in the record for counsel's characterization of the reasons for our denial of defendant's stay motion.

After a lengthy exchange with defense counsel and the court, the municipal prosecutor asked the court to impose a sentence consistent with the sentence imposed by the Law Division judge. The following exchange took place:

THE COURT:  And what's the reason for that?

[MUNICIPAL PROSECUTOR]:  Because there was an appeal.  There was a trial de novo.  There was a finding of guilt.  And the sentence was modified by the judge of the [S]uperior [C]ourt.  So, the [S]uperior [C]ourt judge said there is a [forty-five-]day stay so the defendant can appeal.

The defendant appealed to the Appellate Division.  But, there is no stay of the sentence.  So, if that [forty-five] days is expired and there's no further stay by a higher court, I think we have to impose a sentence.

THE COURT:  . . .  The [S]uperior [C]ourt sentence is not effective because it's only effective if the municipal court does it?

[MUNICIPAL PROSECUTOR]:  Yes.  Because they remanded.  They imposed a new sentence and they remanded to you to impose the sentence.[10]

Defense counsel opposed entry of sentence, arguing the municipal court lacked jurisdiction because an appeal was pending in this court.  The municipal court imposed a sentence consistent with the sentence already imposed by the

---

[10]  There is no indication in the Law Division's July 19, 2024 order the matter was remanded to the municipal court.

A-4018-23

Law Division judge. The court did not enter an order memorializing its decision.[11]

On or about February 5, 2025, defendant moved for reconsideration of the January 27, 2025 sentence, arguing lack of municipal court jurisdiction.

On February 24, 2025, the municipal court entered an order denying the motion. We have not been provided a statement of reasons for that decision. The February 24, 2025 order also memorialized the January 27, 2025 sentence.

On March 4, 2025, defendant moved in this court to vacate the February 24, 2025 municipal court order, arguing the municipal court lacked jurisdiction to enter the order. The State opposed the motion, arguing the municipal court had jurisdiction because defendant's "appeal to this [c]ourt for a stay of sentence" "was ultimately denied on October 7, 2024." On March 21, 2025, we denied defendant's motion.

On April 4, 2025, defendant moved for reconsideration of our March 21, 2025 order. On April 28, 2025, we denied defendant's motion.

Defendant did not appeal the February 24, 2025 order to the Law Division or amend his notice of appeal to include the February 24, 2025 order.

---

[11] According to defendant, the Motor Vehicle Commission was notified of the January 27, 2025 sentence and suspended defendant's license that day.

A-4018-23

On the appeal, defendant raises the following arguments.

POINT I

DID [THE LAW DIVISION] ERR BY AFFIRMING THE LOWER COURT CONVICTION FOR [DWI] AFTER IT WAS SHOWN THAT THE STATE FAILED TO OBSERVE [DEFENDANT] FOR [TWENTY] MINUTES?

POINT II

DID [THE MUNICIPAL COURT] ERR BY FORCING DEFENSE COUNSEL TO HAVE A TRIAL DESPITE HAVING COVID[-19].

POINT III

DID [THE MUNICIPAL COURT] HAVE THE AUTHORITY TO RESENTENCE [DEFENDANT] ON JANUARY 27, 2025 AFTER [DEFENDANT] HAD ALREADY BEEN SENTENCED ON THE EXACT SAME CASE AT THE SUPERIOR COURT LEVEL AFTER A MUNICIPAL APPEAL?

II.

We begin with the Law Division's rejection of defendant's argument the municipal court erred when it denied his counsel's request for an adjournment. We review a court's denial of an adjournment request for an abuse of discretion. See Kosmowski v. Atl. City Med. Ctr., 175 N.J. 568, 574-76 (2003). In deciding whether to grant a request for an adjournment, a court is expected to engage in

19

a "balancing process informed by an intensely fact-sensitive inquiry" and to

consider

> the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; . . . whether denying the continuance will result in identifiable prejudice to the defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case.
>
> [State v. Hayes, 205 N.J. 522, 538 (2011) (quoting United States v. Burton, 584 F.2d 485, 490-91 (D.C. Cir. 1978)).]

"Calendars must be controlled by the court, not unilaterally by [counsel], if . . .

cases are to be processed in an orderly and expeditious manner." Vargas v.

Camilo, 354 N.J. Super. 422, 431 (App. Div. 2002). We will reverse an order

denying an adjournment only if the court's abuse of discretion caused a

"manifest wrong or injury." Hayes, 205 N.J. at 537 (quoting State v. Doro, 103

N.J.L. 88, 93 (E. & A. 1926)).

Our review of the record does not reveal an abuse of the Law Division

judge's discretion regarding the municipal court's denial of defense counsel's

last-minute request to adjourn the trial. Defense counsel claimed an adjournment was necessary because he was ill. He did not, however, produce medical evidence supporting his claim. The record before the Law Division judge reflects the municipal court was understandably suspicious of counsel's claim. The prior afternoon, counsel's request to call an expert witness at the trial the next morning was denied.

We also note that during the trial, defense counsel requested a break to call his office and told the court he was to represent a client at a hearing at 1:30 that afternoon and needed to "notify the [c]ourt that I'm going to be late." In addition, at the conclusion of the trial, the court inquired as to counsel's availability to file post-trial briefs. Defense counsel told the court, "I have immigration hearings tomorrow. I have a [f]amily [l]aw hearing on Friday." It is readily apparent defense counsel intended to attend hearings in other courts scheduled later that week.

We also are not persuaded by defendant's argument his trial counsel was ineffective because he was ill during trial. The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to the effective assistance of counsel. State v. O'Neil, 219 N.J. 598, 610 (2014) (citing Strickland v. Washington, 466

U.S. 668, 686 (1984); State v. Fritz, 105 N.J. 42, 58 (1987)).  To succeed on a claim of ineffective assistance of counsel, the defendant must meet the two-part test established by Strickland and adopted by our Supreme Court in Fritz.  466 U.S. at 687; 105 N.J. at 58.

Under Strickland, a defendant first must show that his or her attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  466 U.S. at 687.  Counsel's performance is deficient if it "[falls] below an objective standard of reasonableness."  Id. at 688.

A defendant also must show that counsel's "deficient performance prejudiced the defense[,]" id. at 687, because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial.  Ibid.  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  Id. at 697; State v. Marshall, 148 N.J. 89, 261 (1997).  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

22

prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

Generally, we do not entertain ineffective assistance of counsel claims on direct appeal "because such claims involve allegations and evidence that lie outside the trial record." State v. Preciose, 129 N.J. 451, 460 (1992). The appropriate procedure for their resolution commonly is not direct appeal, but rather a post-conviction relief application attended by a hearing if a prima facie showing of remediable ineffectiveness is demonstrated. Id. at 460, 463. "However, when the trial itself provides an adequately developed record upon which to evaluate [the] defendant's claims, appellate courts may consider the issue on direct appeal." State v. Castagna, 187 N.J. 293, 313 (2006). Thus, when the defendant's claim of ineffectiveness relates solely to his allegation of a substantive legal error contained completely within the trial record, we can consider it. See State v. Quezada, 402 N.J. Super. 277, 280 (App. Div. 2008).

Because defendant's claim of ineffective assistance of counsel pertains to an alleged legal error dependent upon the trial record, we consider his claim. Nonetheless, defendant does not identify any specific instance supporting his claim his counsel was ineffective during trial. Nor does the record suggest defense counsel was impeded in the representation of his client. During the trial,

23

defense counsel made numerous objections, was attentive to details, parried with the municipal prosecutor, vigorously argued legal points, effectively cross-examined the State's witnesses, and conducted defendant's direct and redirect examinations. In one instance, the municipal prosecutor objected when defense counsel made a hand signal to his client during his cross-examination. At no point during the trial did defense counsel request a break to address a medical issue or to rest.

Defendant also did not specify any alleged ineffective act by his counsel that was pivotal to the outcome of the trial. Defendant conceded he operated his vehicle while intoxicated. He challenged only State's compliance with the twenty-minute observation period to escape the heightened consequences of the .25 percent BAC result. As we discuss in greater detail below, the record contains no evidence the officers did not comply with the twenty-minute observation period.

We turn to defendant's appeal of his conviction. On appeal from a municipal court to the Law Division, the review is de novo on the record. R. 3:23-8(a)(2). The Law Division judge must make independent findings of fact and conclusions of law but defers to the municipal court's credibility findings. Robertson, 228 N.J. at 147.

We do not, however, independently assess the evidence on an appeal from the Law Division's de novo review of the municipal court conviction. State v. Locurto, 157 N.J. 463, 471-72 (1999). Our "standard of review of a de novo verdict after a municipal court trial is to determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole." State v. Ebert, 377 N.J. Super. 1, 8 (App. Div. 2005) (internal quotations marks and citation omitted).

The rule of deference is more compelling where, as here, the municipal and Law Division judges made concurrent findings. Locurto, 157 N.J. at 474. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid. "Therefore, appellate review of the factual and credibility findings of the municipal court and the Law Division 'is exceedingly narrow.'" State v. Reece, 222 N.J. 154, 167 (2015) (quoting Locurto, 157 N.J. at 470). But, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378 (1995).

In Chun, the Court explained, with respect to the use of an Alcotest,

25

[o]perators must wait twenty minutes before collecting a sample to avoid overestimated readings due to residual effects of mouth alcohol. The software is programmed to prohibit operation of the device before the passage of twenty minutes from the time entered as the time of the arrest. Moreover, the operator must observe the test subject for the required twenty-minute period of time to ensure that no alcohol has entered the person's mouth while he or she is awaiting the start of the testing sequence. In addition, if the arrestee swallows anything or regurgitates, or if the operator notices chewing gum or tobacco in the person's mouth, the operator is required to begin counting the twenty-minute period anew.

[194 N.J. at 79.]

The twenty-minute observation period must be established by clear and convincing evidence. State v. Ugrovics, 410 N.J. Super. 482, 489 (App. Div. 2009). In addition,

what constitutes observation must be determined in view of the purpose of the observation requirement: to assure that the suspect has not ingested or regurgitated substances that would confound the results. An officer's observation should be of the sort capable of detecting contamination if it actually occurred. Thus, an officer who looks away must be close enough to detect contamination through aural or olfactory senses.

[Filson, 409 N.J. Super. at 261.]

A-4018-23

We are not persuaded by defendant's argument the Law Division judge erroneously found the State proved by clear and convincing evidence the officers observed defendant for twenty minutes prior to administration of the Alcotest.

There is no legal support for defendant's argument the observation was invalid because Focarelli was not certified to administer an Alcotest. We have previously rejected the argument the twenty-minute observation must be conducted by a certified Alcotest operator. Ugrovics, 410 N.J. Super. at 488-90. There, the officer who arrested Ugrovics on suspicion of DWI took him to police headquarters to process his arrest and for an Alcotest. Id. at 485-86. The arresting officer, who was not a certified Alcotest operator, id. at 486, 487, observed Ugrovics for twenty minutes. Id. at 486. Another officer "was the station's Alcotest operator on that date and was therefore the person who administered the test to" Ugrovics after the observation period. Id. at 485-86.

After the Alcotest results indicated a BAC above the statutory level to establish DWI, Ugrovics entered a guilty plea, but preserved his right to challenge the results on the basis the person who observed him was not the person who administered the Alcotest. Id. at 486-87. The municipal court in accepting the plea, rejected defendant's argument regarding the admissibility of

27

the Alcotest results. Id. at 487. On appeal, the Law Division suppressed the Alcotest results. Ibid.

We reversed. Id. at 490. We noted that the Court in Chun stated that "the operator must observe the test subject for the required twenty-minute period . . . ." Id. at 488 (quoting Chun, 194 N.J. 79). However, we rejected a literal interpretation of that provision. As we explained:

> This description of the test is the central basis for defendant's claim, and the trial court's ruling, that the Alcotest operator is the only person authorized to observe a test subject during this twenty-minute period. The State, on the other hand, argues that the Court's only concern was to ensure that the test subject had not placed anything in his or her mouth that may compromise the reliability of the test. According to the State, this can be established through witnesses other than the operator of the Alcotest.
>
> We acknowledge that defendant's position is, at first blush, supported by what appears to be the plain language used by the Court in Chun. However, a literal, unexamined application of such language here would create an unduly and, in our view, unintended restriction on the State's ability to prosecute DWI cases based on the results of an Alcotest.
>
> With respect to this critical twenty-minute period, the key concern of the Court in Chun was to ensure that the test subject did not ingest, regurgitate[,] or place anything in his or her mouth that could affect the reliability of the test.
>
> [Id. at 488-89 (citing Chun, 194 N.J. at 140).]

Thus, we held

> the State must establish, by clear and convincing evidence, that, during the twenty-minute period immediately preceding the administration of the test, the test subject did not ingest, regurgitate[,] or place anything in his or her mouth that may compromise the reliability of the test results. This can be accomplished through the testimony of any competent witness who can so attest.
>
> [Id. at 489-90 (footnote omitted).]

"The identity of the observer is not germane . . . ." Id. at 485.

We also find sufficient support in the record for the conclusions of the Law Division judge the State proved by clear and convincing evidence there was no break in the officers' observation of defendant warranting initiation of a new observation period. Similar to the municipal court, the Law Division judge accepted Craven's testimony he observed defendant face-to-face for twenty minutes and did not see burping, regurgitation, vomiting, or placement of foreign objects in defendant's mouth. Both courts also accepted Focarelli's testimony he assumed observation of defendant while Craven prepared the Alcotest machine, escorted defendant to the Alcotest room, and observed him while the test was administered. He too did not see a tainting event warranting a new observation period.

Focarelli testified he moved behind defendant briefly during the escort to allow him to pass through the narrow doorway to the Alcotest room. He also verified he remained close to defendant while behind him and was within proximity to detect any tainting event. Craven confirmed Focarelli's testimony. As noted above, observation by an officer "need not consist only of eye-to-eye contact[,]" provided the officer is close enough to a suspect to detect vomiting, regurgitation, or placement of a foreign object in the mouth during the twenty-minute observation period. Filson, 409 N.J. Super. at 258.

Defendant testified Focarelli was several feet behind him when he had a silent hiccup and may have suppressed regurgitation, and the officer could not have detected those tainting events. However, defense counsel did not produce the booking area recording, which purportedly depicts Focarelli's escort of defendant, at trial. Thus, both courts had before them only the competing testimony of the witnesses and determined the officers' account of Focarelli's position during the escort was credible.

Nor was there any support in the record for defendant's claim to have burped while being observed by Craven. Craven's body worn camera recording was admitted into evidence at trial and the Law Division judge found Craven

30

credibly testified his did not detect defendant burping during the observation period. We see no basis on which to disturb the Law Division judge's decision.[12]

Finally, we turn to defendant's challenge to the municipal court's February 14, 2025 order incorporating defendant's resentencing. Defendant did not amend his notice of appeal to include the February 14, 2025 order. We, therefore, do not consider his challenge to the order. See R. 2:5-1(f)(2)(ii) (stating that a notice of appeal "shall . . . designate the judgment, decision, action, or rule, or part thereof, appealed from."); Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 461-62 (App. Div. 2002) (stating appellate review pertains only to judgments or orders specified in the notice of appeal).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

---

[12] In his merits brief, in addition to extensively describing the booking area recording that was not admitted into evidence, defense counsel describes in detail what he claims are findings by "[e]xperts at the University of Texas Southwest Medical Center" regarding "silent reflux." The brief contains no citation supporting these purported expert findings and defendant's last-minute attempt to proffer expert testimony was rejected by the municipal court. Because no expert opinion was admitted into evidence, on our own motion, we strike from defendant's brief all references to "silent reflux" and any purported expert opinions about that condition. See Rule 2:5-4(a).

31

A-4018-23